IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

STATIC CONTROL COMPONENTS, )
INC., )
 )
        Plaintiff, )
 )
        v. )    1:08CV928
 )
SUMMIX, INC., )
 )
        Defendant. )

## **MEMORANDUM OPINION AND RECOMMENDATION**
## **OF UNITED STATES MAGISTRATE JUDGE**

The instant matter comes before the undersigned United States Magistrate Judge for a recommended ruling on Defendant's Motion for Summary Judgment (Docket Entry 63). (See Docket Entries dated Dec. 23, 2008, Oct. 26, 2011, and Jan. 12, 2012 (designating case as subject to handling pursuant to this Court's Amended Standing Order No. 30, assigning case to undersigned Magistrate Judge, and referring instant Motion to same, respectively).)[1] For the reasons that follow, the instant Motion should be granted in part and denied in part.

### Background

Plaintiff's First Amended Complaint ("FAC") identifies Plaintiff as a company that provided materials to toner cartridge

---

[1] Under said Standing Order, "[t]he magistrate judge to whom the case is assigned will rule or make recommendations upon all motions, both non-dispositive and dispositive." M.D.N.C. Amended Standing Order No. 30, ¶ 2; see also M.D.N.C. LR72.2 ("Duties and cases may be assigned or referred to a Magistrate Judge . . . by the clerk in compliance with standing orders . . . .").

"remanufacturers," enterprises that "take used toner cartridges, clean them, replace worn out components, add new toner and sell the resulting remanufactured cartridge at a discount to the price of a new cartridge." (Docket Entry 51, ¶ 8.) According to the FAC, Defendant (a Japanese corporation) sold two types of components to Plaintiff: 1) Primary Charging Rollers ("PCRs"); and 2) Developer Rollers. (Id. ¶ 7; see also id. ¶ 2.) The purchase of these products allegedly occurred via Plaintiff's Purchase Order Terms and Conditions (which included a warranty of merchantability), and the products "were manufactured by [Defendant] and shipped to [Plaintiff] and received at [Plaintiff's] principal place of business . . . ." (Id. ¶ 9; see also id. ¶¶ 11, 17.)

Plaintiff complains that Defendant did not maintain a consistent level of quality with respect to these products, and, as a result, Plaintiff received from Defendant a number of PCRs and Developer Rollers that Plaintiff could not sell to its customers. (See id. ¶¶ 10-21.) Specifically, the FAC contends that in the fall of 2007, Plaintiff detected "numerous defects" in the Developer Rollers supplied by Defendant, rendering them "not merchantable" (see id. ¶ 19), and likewise, in the fall of 2008, Plaintiff detected "numerous defects" in the PCRs it received from Defendant, which similarly rendered those PCRs "not merchantable" (id. ¶ 13). According to the FAC, each of these events constitutes a breach of the warranty of merchantability and, accordingly, a breach of contract. (See id. ¶¶ 13, 19.)

The FAC also asserts a claim against Defendant for misappropriation of Plaintiff's trade secrets through Plaintiff's former employee, Harry Morikawa. (See id. ¶¶ 22-31.) In this regard, the FAC alleges that Plaintiff employed Mr. Morikawa to act as an intermediary and translator and that, in this role, Mr. Morikawa served as Plaintiff's almost exclusive means of contact with Defendant. (See id. ¶ 23.) The FAC further describes how, as an employee privy to Plaintiff's confidential information, including pricing and customer information, Plaintiff had Mr. Morikawa sign a confidentiality agreement restricting him from revealing any of said information. (See id.)

According to the FAC, during certain business meetings between Plaintiff and Defendant, it became "apparent to [Plaintiff] that Mr. Morikawa was representing the interests of [Defendant] rather than the interests of [Plaintiff]," and, accordingly, Plaintiff fired Mr. Morikawa in June 2008. (Id. ¶ 24.) The FAC alleges that Mr. Morikawa thereafter began working for Defendant as a consultant and, during that time, revealed Plaintiff's trade secrets with respect to Plaintiff's customers and pricing in violation of the confidentiality agreement. (See id. ¶ 25.)

Based on the foregoing events, Plaintiff brings claims against Defendant for 1) "Breach of Contract and Warranty of Merchantability - PCRs" (id. ¶¶ 10-15); 2) "Breach of Contract and Warranty of Merchantability - Developer Rollers" (id. ¶¶ 16-21); and 3) "Violation of the North Carolina Trade Secrets Protection Act N.C.G.S. 66-153" (id. ¶¶ 22-31). Defendant answered

Plaintiff's claims and filed a counterclaim asserting breach of contract on the grounds that Defendant delivered merchantable products for which Plaintiff failed to pay. (See Docket Entry 52 at 4-5.) Defendant has now filed the instant Motion for Summary Judgment. (Docket Entry 63.)

## Standard

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Such a genuine dispute exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In making this determination, the Court must view the evidence and any reasonable inferences therefrom in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The party moving for summary judgment may discharge its burden by identifying an absence of evidence to support the non-moving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-moving party then must "set forth specific facts showing that there is a *genuine issue for trial*." Matsushita Elec. Indus., 475 U.S. at 586–87 (citation omitted) (emphasis in original). In this regard, the non-moving party must convince the Court that evidence exists upon which a finder of fact could properly return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 252 (citation omitted); see also Francis v.

Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

To the extent the Court must draw conclusions about matters of North Carolina law in evaluating Defendant's Motion for Summary Judgment,[2] "the highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted." West v. American Tel. & Tel. Co., 311 U.S. 223, 236 (1940). However, "[a] state is not without law save as its highest court has declared it. There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them." Id. Accordingly, "it is the duty of [a federal court facing a question of state law] to ascertain from all the available data what the state law is and apply it . . . ." Id. at 237. "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a

---

[2] Although Defendant is a Japanese corporation, neither Party disputes that North Carolina law governs the instant action. (See, e.g., Docket Entry 64 at 8-9 (citing North Carolina case law); Docket Entry 66 at 10-11 (citing Article 2 of North Carolina's version of the Uniform Commercial Code as governing contract claims).)

-5-

federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Id.

Discussion

A. Breach of Contract Claims

Because this dispute involves a contract for the sale of goods, North Carolina's version of the Uniform Commercial Code ("UCC") governs. See Thermal Design, Inc. v. M & M Builders, Inc., ___ N.C. App. ___, ___ n.2, 698 S.E.2d 516, 521 n.2 (2010) ("The transaction in issue between the parties clearly concerns the sale of 'goods,' and we therefore apply the UCC to this case.") Under that law, "[u]nless excluded or modified . . ., a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.C. Gen. Stat. § 25-2-314(1).

"In order to establish a breach of the implied warranty of merchantability, a plaintiff must prove that: (1) the product bought and sold was subject to an implied warranty of merchantability; (2) the product did not comply with the warranty because it was defective at the time of sale; (3) the plaintiff's injury was due to the defective nature of the product; and (4) plaintiff suffered damages as a result." Evans v. Evans, 153 N.C. App. 54, 68, 569 S.E. 2d 303, 311 (2002) (citing Dewitt v. Eveready Battery Co., Inc., 355 N.C. 672, 682-83, 565 S.E.2d 140, 147 (2002)).³ Moreover, under the UCC, "if the goods or the tender of

---

³ With respect to the element of damages, Defendant's Memorandum of Law in Support of Defendant's Motion for Summary
(continued...)

delivery fail in any respect to conform to the contract, the buyer may (a) reject the whole; or (b) accept the whole; or (c) accept any commercial unit or units and reject the rest." N.C. Gen. Stat. § 25-2-601.

In the instant matter, Defendant contends that, despite Plaintiff's claims that defects in the PCRs and Developer Rollers rendered those goods unmerchantable, "[Plaintiff] did not reject Developer Rollers due to quality control issues and [Plaintiff] was able to resell the PCRs delivered by [Defendant] . . . ." (Docket Entry 64 at 8.) Accordingly, Defendant concludes that "any alleged breach by [Defendant] of the contract . . . did not 'substantially defeat[] the purpose of the agreement' and was not a 'substantial failure to perform,'" (id. (quoting Fletcher v. Fletcher, 123 N.C. App. 744, 752, 474 S.E.2d 802, 807-08 (1996)) (alterations added)), and is therefore not actionable. Although Defendant's arguments

---

³(...continued)
Judgment states:

> While it is quite telling that, after three years of litigation, [Plaintiff] is unable to identify any customer, or even sale, lost as a result of the delivery by [Defendant] of allegedly defective products and does not have any calculation of damages it has allegedly suffered (See Brunton Dep., pp. 29-30, 42; Pijpers Dep., pp. 31-32, 53-54), [Defendant] does not move for summary judgment on the failure to produce sufficient evidence as to damages in recognition of case law holding that "a failure to prove damages is not grounds for a judgment as a matter of law on a breach of contract claim because proof of the other elements of such a claim entitles a plaintiff to at least nominal damages." Pharmanetics, Inc. v. Aventis Pharm., Inc., No. 5:03-CV-817-FL(2), 2005 WL 6000369, *17 (E.D.N.C. May 4, 2005) (citation omitted).

(Docket Entry 64 at 8 n.14.)

are couched in terms of the substantial performance requirements of general North Carolina contract law rather than the perfect tender requirements of the UCC, the undersigned interprets said arguments as contentions that Plaintiff has failed to provide sufficient evidence that the goods delivered were non-conforming or unmerchantable.

In support of these contentions, Defendant points to the deposition testimony of Aaron Maule and Holly Brunton, two of Plaintiff's designees under Fed. R. Civ. P. 30(b)(6). In one excerpt referenced by Defendant, Mr. Maule confirmed that Plaintiff "didn't reject any at [quality control] on the [D]eveloper [R]ollers." (Docket Entry 64-6 at 7.) In the deposition of Ms. Brunton, Plaintiff's counsel reviewed a chart reflecting Plaintiff's average selling price, by month, of PCRs manufactured by Defendant and sold by Plaintiff. (See Docket Entry 64-5 at 4.) In asking about the indication in said chart that Plaintiff continued to sell Defendant's product as late as 2011, Ms. Brunton states: "I would have to confirm, but if it's on [the chart] we sold the product." (Id.)

Plaintiff, however, has presented evidence to contest Defendant's summary judgment theories. With respect to the evidence that Plaintiff's quality control personnel failed to reject the Developer Rollers, Plaintiff pointed out the following:

> It is true that [Plaintiff's] quality control department did not reject these rollers, but that is because this product had not yet developed to the place where [the] quality control department was involved in the process. When a new product is initially purchased, it is [Plaintiff]'s engineering division, not its quality

-8-

control department that performs the testing of the
product to determine if it meets the specifications of
the samples that were qualified.

(Docket Entry 66 at 13.) Plaintiff cites the 30(b)(6) deposition testimony of Roderick Boone to support this contention. (<u>See</u> <u>id.</u>) In said testimony, Mr. Boone describes the testing performed on the Developer Rollers and the alleged deficiencies identified by Plaintiff during that testing. (<u>See</u> Docket Entry 66-7 at 5-6.)

Regarding Defendant's contention that Plaintiff continued to sell Defendant's products despite asserting that they were "not merchantable," Plaintiff offers the following: "Some bad Developer Rollers were re-sold to [Plaintiff's] customers, but [Plaintiff] has only sought damages for the re-sold Developer Rollers that were returned by customers for a credit because of quality issues." (<u>See</u> Docket Entry 66 at 13.) With respect specifically to the PCRs, Plaintiff states:

> [Defendant] in its motion assumes the [Defendant-provided] PCRs that were sold by [Plaintiff] after October 1, 2008 were the same ones which [Plaintiff] rejected for defects. There is no evidence cited to support this assumption. [Plaintiff] did re-sell certain PCRs delivered by [Defendant], but they were previously delivered good PCRs, not the newly delivered defective PCRs. [Plaintiff] is not seeking damages for delivery of good PCRs, but it is seeking damages caused by the delivery of defective PCRs.

(<u>Id.</u> at 14 (internal citation omitted).)

Plaintiff has also provided an affidavit of Mr. Maule in connection with its Response Brief, in which Mr. Maule avers:

> As I testified in my deposition, the quality control department of [Plaintiff] rejected the shipment of a number of PCRs in the fall of 2008. I have been informed that [Defendant] claims that [Plaintiff] later re-sold these PCRs. This is not true. The rejected PCRs were

-9-

>     placed in [Plaintiff's] warehouse in an area designated
>     as "QC hold". Products in QC hold are held pending
>     return to the manufacturer or resolution of the issues
>     which led to the product being placed in QC hold. These
>     products are not re-sold to customers unless they are
>     removed from QC hold and placed in the general warehouse.

(Docket Entry 66-15, ¶ 3.) Mr. Maule goes on to specify in his affidavit that "[t]he rejected PCRs at issue in this case were not re-moved [sic] from QC hold and were not sold to customers." (Id. ¶ 4.)

On this record, a genuine issue of material fact exists as to whether the components at issue were defective and whether Plaintiff later re-sold those allegedly unmerchantable components. Plaintiff has provided evidence, at least in the form of deposition testimony and email exchanges, that the components sold by Defendant were tested, were found defective, and were unsaleable. Despite this evidence, Defendant in essence asks this Court to find in its favor because Plaintiff's assertions appear unlikely in the face of other evidence. (See Docket Entry 69 at 4.) However, at the summary judgment stage, the Court must view the evidence and any reasonable inferences therefrom in a light most favorable to the non-moving party, Matsushita, 475 U.S. at 587, and "may not make credibility determinations or weigh the evidence," Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Any decision to discredit the evidence on which Plaintiff relies must come from the finder of fact.

Defendant contends in Reply that Plaintiff's "submission of 'evidence' that it has not sold [Defendant-provided] PCRs it now claims were defective to its customers in the form of an employee's

affidavit that wholly contradicts [Plaintiff]'s sales records should not be countenanced." (Docket Entry 69 at 1.) Defendant points to Plaintiff's own records to show that Plaintiff sold a substantial number of PCRs after the alleged rejection and Defendant asserts that "[t]here is no evidence that [Plaintiff] had such a stockpile of non-defective [Defendant-provided] PCRs. Any claim now of such a stock-pile is belied by the fact that: (1) [Plaintiff] claims it had to 'rush' its own PCRs to market; and (2) [Plaintiff] did not first sell non-defective [Defendant-provided] PCRs before 'rushing' its own PCRs to market." (Id. at 4.)

Although the undersigned recognizes that the Court need not accept as true any statements in an affidavit from an employee of Plaintiff that contradict Plaintiff's own prior evidence, see generally Erwin v. United States, 591 F.3d 313, 325 n.7 (4th Cir. 2010); Hernandez v. Trawler Miss Vertie Mae, Inc., 187 F.3d 432, 438 (4th Cir. 1999); Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984), Mr. Maule's affidavit, submitted in connection with Plaintiff's Response Brief, does not appear to contradict any prior evidence from Plaintiff. The sales chart and deposition testimony cited by Defendant merely support the assertion that Plaintiff continued to sell parts manufactured by Defendant, not necessarily that those parts were the defective parts about which Plaintiff now complains. At most, the evidence identified by Defendant calls into question the credibility of Mr. Maule's affidavit, a matter the fact-finder must resolve, not a matter for the Court to decide at this stage of the proceedings.

B.  <u>Misappropriation of Trade Secrets Claim</u>

Under North Carolina law, "[m]isappropriation of a trade secret is prima facie established by the introduction of <u>substantial evidence</u> that the person against whom relief is sought both: (1) Knows or should have known of the trade secret; and (2) Has had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner." N.C. Gen. Stat. § 66-155 (emphasis added).  For purposes of this statute, a trade secret is defined as:

> [B]usiness or technical information including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
>
> a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
>
> b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C. Gen. Stat. § 66-152.

Furthermore, misappropriation means "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." <u>Id.</u>  To state a claim for misappropriation of trade secrets, a plaintiff "must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of

misappropriating and a court to determine whether misappropriation has or is threatened to occur." Analog Devices, Inc., v. Michalski, 157 N.C. App. 462, 468, 579 S.E.2d 449, 453 (2003) (citation omitted).

Plaintiff claims that Mr. Morikawa misappropriated Plaintiff's pricing and customer information and used said information in order to contact Plaintiff's clients in an attempt to garner their business. (See Docket Entry 51, ¶¶ 22-31.) According to Plaintiff, the fact that Defendant began shipping defective component parts to Plaintiff just prior to the date when Plaintiff planned to introduce its own manufactured versions of those same components to the market constitutes circumstantial evidence that Mr. Morikawa shared Plaintiff's intended timeline for that release with Defendant. (See Docket Entry 66 at 16-17.) Specifically, Plaintiff notes that, although Defendant knew Plaintiff planned to release its own components in the future, Defendant did not know when Plaintiff intended to bring those parts to market. (Id. at 6 n.3.) Plaintiff further reasons that Defendant's shipment of defective components caused Plaintiff to release their own components into the market more quickly than planned, resulting in Plaintiff selling inferior components that caused a corresponding loss of business. (Id. at 16-17.)

In its instant Motion for Summary Judgment, Defendant points out that Plaintiff's primary evidence that Mr. Morikawa misappropriated pricing and customer information - an email in which Mr. Morikawa introduced Defendant to one of Plaintiff's

customers - demonstrates that Mr. Morikawa "may arguably have violated a non-competition agreement with [Plaintiff], [but] it is not tantamount to misappropriation of trade secrets by [Defendant]." (See Docket Entry 64 at 7.) Moreover, Defendant takes issue with Plaintiff's contention that circumstantial evidence demonstrates that Mr. Morikawa must have provided information to Defendant regarding Plaintiff's planned release of its own PCRs:

> [Plaintiff]'s assertion that there is "circumstantial evidence" (sufficient to withstand a summary judgment motion) that [Mr.] Morikawa necessarily provided [Defendant] with [Plaintiff]'s pricing information where [Plaintiff] has presented evidence that [Defendant] knew that [Plaintiff] was going to begin selling its own PCRs and began shipping defective PCRs to [Plaintiff] is inane. In essence, [Plaintiff] is asking this Court to infer from these two facts that [Defendant] purposefully forfeited hundreds of thousands of dollars in payment from [Plaintiff] by intentionally shipping defective goods to [Plaintiff] (instead of filling [Plaintiff]'s orders with non-defective goods) so that [Plaintiff] would have to "rush" its own PCRs to market (meaning, presumably, that it would be forced to introduce an inferior product) such that [Defendant] could then capitalize on the bind it placed [Plaintiff] in by luring away [Plaintiff]'s customers through competitive pricing (learned via [Mr.] Morikawa's knowledge of [Plaintiff]'s pricing) all without it ever occurring to [Defendant] that its reputation with these very customers would be ruined as a result of shipping "defective" product to [Plaintiff] in the first place!

(Docket Entry 69 at 3.)

The undersigned finds merit in Defendant's arguments on these points. Plaintiff relies on two pieces of evidence to support its claim that Defendant misappropriated Plaintiff's trade secrets: 1) an email sent by Mr. Morikawa to a customer of Plaintiff attaching Defendant's products list and offering to send samples;

-14-

and 2) Defendant's shipment to Plaintiff of defective components. These two items do not amount to the substantial evidence required under N.C. Gen. Stat. § 66-155.

For example, this evidence fails to show that Defendant underbid any of Plaintiff's pricing. Furthermore, although Plaintiff states that Defendant "offered to sell its PCRs to [Plaintiff's] customers on terms that suggested, at least to [Plaintiff]'s distributor, that [Defendant] had access to [Plaintiff's] pricing information" (Docket Entry 66 at 17), the evidence cited by Plaintiff to support said contention does not appear in any way to support it (see Docket Entry 67-8). Defendant's Motion cannot be defeated by "mere unsupported speculation." Booz, Allen, 452 F.3d at 308. On these facts, the Court should find that Plaintiff has come forward with insufficient evidence to survive Defendant's Motion for Summary Judgment as to its claim for misappropriation of trade secrets.

## Conclusion

On the instant facts, a genuine issue of material fact exists as to whether Defendant delivered unmerchantable PCRs and Developer Rollers to Plaintiff; however, Defendant has identified an absence of evidence necessary to sustain Plaintiff's trade secrets misappropriation claim.

**IT IS THEREFORE RECOMMENDED** that Defendant's Motion for Summary Judgment (Docket Entry 63) be granted in part and denied in part in that the Court should enter summary judgment for Defendant on Plaintiff's claim for "Violation of the North Carolina Trade

Secrets Protection Act N.C.G.S. 66-153" (Docket Entry 51, ¶¶ 22-31) but not on Plaintiff's claims for "Breach of Contract and Warranty of Merchantability - Developer Rollers" (id. ¶¶ 16-21) and "Breach of Contract and Warranty of Merchantability - PCRs" (id. ¶¶ 10-15) or on Defendant's counterclaim for breach of contract.

                                          /s/ L. Patrick Auld
                                              **L. Patrick Auld**
                                   **United States Magistrate Judge**

April 20, 2012